BAKER *v.* BOARD OF ELECTION COMMISSIONERS OF WAYNE
COUNTY.

RUSSELL *v.* SAME.

SHELBY *v.* SAME.

1. ELECTIONS—PARTY TICKETS—RELATIVE POSITIONS UPON BALLOT
—DUTY OF COMMISSIONERS—MANDAMUS.

*Mandamus* will lie to compel a board of election commis-
sioners, in making up the ballot for use at an election, to
comply with section 14 of Act No. 271, Pub. Acts 1895, by
assigning to the ticket of the party having the greatest num-
ber of votes within the county at the last preceding general
election the first place upon the ballot, and to the tickets of
all other parties positions governed relatively by the same
rule.

2. SAME—FUSION TICKET.

A state convention of the Democratic party, regularly called,
convened on the same day and in the same city with the
state conventions of the People's party, a party which had
been represented at the last preceding election, and of the
Union Silver party, an organization of recent origin. An
arrangement was effected whereby the delegates to the three
conventions met together and nominated a fusion ticket,
under an agreement requiring a majority of all the votes cast
to nominate, and giving to the Democratic delegates the right
to cast one-half the entire number of votes. The ticket nomi-
nated was termed the "Democratic People's Union Silver
Ticket," and a new and distinctive vignette was adopted.
*Held,* that the ticket adopted was not the Democratic ticket,
and was therefore not entitled to the place on the official bal-
lot which the Democratic party had a right to demand by
virtue of the number of votes cast by it at the last preceding
election.

3. SAME—MASS CONVENTION.

After such action had been taken by the joint convention, a
mass convention, composed wholly of Democrats, was held
in another city, and this convention placed in nomination
candidates for the various offices, and termed its ticket the

"Democratic Ticket." The convention was not called by officers having authority from the Democratic party as previously organized. *Held*, that the party, while it was entirely justified in calling its ticket the "Democratic Ticket," was not the successor of the party as it had existed in the previous campaign so as to entitle its ticket to the position upon the official ballot which would have been accorded to the ticket of the Democratic party, regularly nominated in a convention called and organized by the proper officers.

4. SAME—CERTIFICATION—REGULARITY.

The Supreme Court will not, in *mandamus* proceedings to compel election commissioners to assign to party tickets the positions upon the official ballot to which they are respectively entitled, inquire into the regularity of the certification of a particular ticket, where it appears from the showing of all the parties that the ticket certified is entitled to a place upon the ballot.

5. SAME—USE OF VIGNETTE—MUNICIPAL CHARTER—STATUTES.

The provision of a city charter, inserted in the section which provides for the certification of nominations for city officers by the officers of city committees of political parties, that no vignette shall be furnished or printed on any ballot, is not made applicable to ballots to be cast within the city for other than city officers by a subsequent provision requiring the election commissioners of the county to print all ballots intended for use in the city in the manner prescribed for elections of city officers, but the general statute governs with respect to such ballots.

*Mandamus* by Fred A. Baker, chairman of the Democratic state central committee, to compel the board of election commissioners of Wayne county to print the ticket certified by relator as second on the official ballot to be used at the ensuing election. Submitted October 15, 1896. Denied October 20, 1896.

Charles P. Russell, chairman of the Prohibition state central committee, filed a like petition. Writ granted.

W: R. Shelby, assuming to be chairman of the Democratic state central committee, filed a like petition. Writ denied.

*Fred A. Baker, in pro. per.*

*Myron H. Walker* and *John J. Speed*, for relator Russell.

*Charles M. Swift, Cyrus E. Lathrop*, and *William J. Gray*, for relator Shelby.

*Edwin F. Conely*, for respondent.

MONTGOMERY, J.    The relator filed a petition as chairman of the Democratic state central committee, praying for a *mandamus* to compel the respondent to print the ticket certified by him as second on the ballot to be used in the ensuing election.    Charles P. Russell, chairman of the state central committee of the Prohibition party, has also filed a petition, asking that the ticket certified by the officers of his committee be printed second on the ballot. W. R. Shelby, assuming to be chairman of the state central committee of the Democratic party, has also filed a petition, asking that the ticket certified by the officers of his committee be given the same place contended for by the other petitioners, and also asking that the ticket certified by relator be not given a place on the ballot under the certification of relator as chairman, and of G. Walter Meade as secretary, of the Democratic state central committee.

It will conduce to a better understanding of the case if we state what is not in controversy between the parties. *First*, it is not contended but that the Baker ticket is entitled to a place on the ballot under a certification by the proper officers of the convention which placed it in nomination. *Second*, it is conceded that the Shelby ticket is entitled to a place on the ballot, but it is contended by relator that the ticket should not be printed under the name "Democratic." Relator's counsel states that he has no objection to the use of the vignette certified, but does object to the use of the name "Democratic."

The matters in controversy are—

*First*, whether the ticket certified by relator is entitled to be printed as the Democratic ticket, and to be given the

place which the law gives to the party having the second greatest number of votes at the preceding general election, which was admittedly the Democratic party.

*Second,* if it be held that the Baker ticket is not entitled to the place, whether the Shelby ticket is, or whether the place should be given to the Prohibition party.

*Third,* whether the relator is entitled to have the vignette certified by the officers of his committee printed on the ballots designed for use in the city of Detroit.

The statute provides (Pub. Acts 1895, Act No. 271, § 10) that the board of election commissioners shall cause to be printed on the ballot the names of the candidates nominated by the regularly called conventions of any party, and that it shall be the duty of the state, district, or county committee of each political party to forward to the chairman of said board of election commissioners of each county in the State a copy of the vignette adopted by them, and the names of all candidates nominated at any regularly called convention at which candidates for any one of the offices mentioned in section 1 of the act shall be nominated. Section 11 provides: "It shall hereafter be the duty of the state committee of any political party or organization in this State, before each election, to prepare and adopt, by engraving or otherwise, a vignette to be printed at the top of the column of such ballot assigned to such party, as a distinctive and characteristic heading thereto. Such vignette shall not be more than one inch and a half square, and, in addition to the device adopted, shall set forth legibly the name of such party." By section 14 it is provided that "the ticket of the party having the greatest number of votes within the county at the last preceding general election shall be placed first on the ballot, the position of other tickets to be governed relatively by the same rule." This last-quoted provision is the one which has given rise to the controversy now before the court. It is contended that the provision is not merely directory, but was inserted for the purpose of assigning positions on the ticket which should be understood

by the voter, and that it is a matter of right to have the ticket of each party organization occupy the place provided by this statute. We think that, whether the statute providing for a distinct place upon the ballot for each of the several tickets to be voted for was designed simply to avoid confusion, or in part to furnish information to the voter, it is a provision which should be observed in making up the ticket. This being so, it, of necessity, involves some inquiry into the question as to which of the two tickets known as the Baker and the Shelby tickets can be said to be the ticket of the Democratic party, represented at the preceding election.

The reluctance of the courts to enter upon an inquiry, or to permit an inquiry by the election commissioners, into the question of fact as to which of two contending factions truly represents a political party, has been manifested in various cases. *State, ex rel. Sturdevant,* v. *Allen,* 43 Neb. 651; *Phelps* v. *Piper,* 48 Neb. 724; *Shields* v. *Jacob,* 88 Mich. 164. In *Shields* v. *Jacob* it was held that the court would not undertake to determine which of two rival conventions resulting from a split in a regularly called convention should be treated as the regular convention of the party, and a *mandamus* was issued requiring the election commissioners to give to both tickets a place upon the ballot. At the time that decision was rendered, however, the provision requiring that the ticket of the party having the greatest number of votes within the county at the last preceding election should be placed first upon the ballot, and that the position of other tickets should be governed relatively by the same rule, was not a part of the statute, and it was not necessary to determine which of these tickets should be placed first on the ballot. Under the law as it now exists, such an investigation seems necessary, and it would seem that the commissioners did determine the question, and place the Shelby ticket second on the ballot.

The facts in regard to the selection of these two tickets are not in controversy. In certifying the Baker ticket, the relator accompanied his certificate to the commissioners by a petition setting out all the facts which resulted in the nomination of the ticket, together with the manner of its nomination. This petition sets out, in substance, that the petitioner is the successor of the Democratic organization which existed and was represented on the ticket two years ago; that a regularly called convention of the party was held at Bay City on the 25th of August, 1896; that at that date there was also held in the same city a convention of the Union Silver party, an organization of recent origin, which had not taken part in any preceding state election, and a convention of the People's party; that each of the three conventions appointed a conference committee, which committees endeavored to agree on a division of the offices on the electoral and state ticket, but, being unable to do so, agreed upon a report, which was submitted to each of said conventions, which report was as follows:

"TO THE DEMOCRATIC CONVENTION:

"Your committee appointed to meet a like committee from the Union Silver and People's party conventions met the committee as directed, the Democratic party, the Union Silver party, and the People's party each being represented by five representatives. The joint committee was organized by electing C. H. McGinley chairman, and A. A. Ellis secretary. After a full statement of the object to be accomplished, the following resolution was adopted: '*Resolved*, that we recommend a union of all silver forces, and that the vignette upon the ticket be a representation of the silver dollar, and containing the following names and words, in the following order, to wit, "Democratic People's Union Silver Ticket," and also a picture of William J. Bryan, the Democratic candidate for president.'

"Your committee further report that, after an earnest effort and much discussion, they were unable to agree upon the division of the ticket, and fully realizing that it was for the interest of the people of the State that a strong

union ticket should be nominated, which would command the entire confidence of the people, the following resolution was unanimously adopted: '*Resolved*, that we report to our various conventions that it is the sense of this conference committee that the name and style of the ticket be as hereinbefore fixed and as above set forth, and that the state and electoral ticket be nominated by a joint convention, to be composed of the members of the several conventions, to be held at once in one hall, and that the several candidates be nominated as above set forth, by a joint convention; the candidate receiving a majority of all the votes cast for the respective offices to be declared the nominee of the convention for said office. Owing to the fact that the Democratic party has the largest representation, the People's party and the Union Silver party together shall, in the joint convention, be entitled to an equal number of votes cast by the Democratic party in the joint convention.'"

The petition further states that each of the three conventions adopted the report of the committee; that thereafter all the delegates met in one hall, elected a chairman of the joint convention, and secretaries; that, in taking a vote on the nominations, said convention pursued the plan provided by the conference report, and that, at the conclusion of the nominations, said joint convention and each of the three conventions were adjourned without day.

As to the action of the convention which placed in nomination the "Shelby Ticket," so called, it appears that a mass convention was held at the city of Lansing, composed wholly of Democrats, and that this convention placed in nomination presidential electors, and candidates for the various state offices; that this action was taken after the action of the Democratic convention at Bay City.

We think it cannot be said that the so-called "Baker Ticket" can be treated as the ticket of the organization known as the "Democratic Party" two years ago. The ticket results from a combination with two other political parties, one of which had a place upon the ticket, and

110 MICH.—41.

which would, under the same statute which would assign the Democratic ticket to second place, be entitled to third place. It is true that the convention of the Democrats held at Bay City, doubtless, assented to this ticket, as, likewise, did the People's party and the Union Silver party; but, as appears from the petition presented by relator himself, neither one of these three parties in the joint convention retained the power to name the candidates of the convention. The Democratic delegates retained precisely one-half the voting power of the convention; each of the other parties one-fourth. Furthermore, the name adopted by the convention was not the name of the party which had previously been represented on the ballot, and, in every view, the ticket nominated may as well be said to be the ticket of the People's party as of the Democratic party. The evident purpose was to unite the forces of these various organizations for the present campaign, and the result was the formation of a new party for the time being, under a new name.

Can it be said, then, that the Lansing convention represented the party organization of two years ago, within the meaning of the statute? We think not. While the record shows that the convention was composed wholly of Democrats, and while there is a wide difference in the statement as to the proportion of Democrats who now have or who are expected to give their adherence to this party, yet it was not brought into existence by the action of the machinery of the party to which the calling of conventions had been committed; and, while we have no doubt of the authority of any considerable number of electors to call a convention, we do not think that this convention was a regularly called convention of the Democratic party of two years ago, and for that reason we determine that the ticket nominated is not, under the provisions of this statute, entitled to second place on the ballot. There is no provision of our statute which excludes the formation of new parties. We think this

must be deemed in one sense a new party, although we have no hesitancy in saying that it is a party entitled to call itself "Democratic." As the record shows that the convention was composed wholly of men who had acted with the Democratic party, it certainly can be no imposition upon the voter, or in any way calculated to mislead, for them to head their ticket "Democratic," unless confusion would result from the fact that another party is entitled to that designation. Both by the action of the joint convention at Bay City, and as appears by the action of the Baker committee, it had been resolved to abandon the vignette used two years ago, and the name as well, and adopt a new vignette, with the name "Democratic People's Union Silver Ticket." This being the case, we do not think it can be said that the use of the name "Democratic" on the Shelby ticket is calculated to mislead the voter. We do not wish to be understood as expressing the opinion that if the Democratic convention regularly called had resulted in the nomination of a ticket by that convention alone, under the party name, another ticket could be placed in nomination under that name by a mass convention. Such is not the state of facts before us, and on that state of facts we prefer to express no opinion.

It results from the foregoing that in the county of Wayne the Prohibition ticket is entitled to priority over the Baker ticket and the Shelby ticket, and is entitled to second place on the ballot, except in that portion of the county which is a part of the Second congressional district, for which portion the congressional ticket of the People's party is entitled to second place, and the Prohibition ticket to third place. The Baker ticket and the Shelby ticket should be assigned to the remaining places, according to the judgment of the commissioners.

As regards the certification of the Baker ticket, we do not deem it necessary to pass upon the regularity thereof. As it appears by the showing of all the parties that this

ticket is entitled to a place on the ballot, we will not inquire into the regularity of the certification.

It is contended that no vignette should be used on the ballots in the city of Detroit. This is based upon the provisions of chapter 2 of the city charter, as amended by Act No. 468, Local Acts 1895, which, it is claimed, supersedes the general statute governing elections so far as it relates to the city of Detroit. Section 27 of chapter 2 of the amended charter provides for a board of election commissioners for the city, whose duty it is to cause to be printed the ballots for the election of all city officers, and for all proposed questions to be submitted by the common council. Section 28 provides that every ballot must be printed on paper uniform in size, etc.; that ballots shall be printed substantially in the form prescribed by the general election laws of the State for the election of state and county officers, excepting that the instructions printed on the ballot shall be as set forth in the section. It provides, further, that no vignette shall be furnished or printed on any ballot. These provisions of these sections, it is plain, relate to the city ticket, which is voted in a separate ballot box. Section 57 provides that—

"The mode of conducting all state, congressional, and county elections in said city shall be in the manner herein provided for the election of city officers, except that the returns thereof shall be made as herein provided; and the provisions of this act shall govern when applicable to such elections, notwithstanding the provisions of any general law, unless the same shall in terms be declared applicable to elections in said city. It shall be the duty of the election commissioners of the county to print all ballots intended for use in said city in the manner herein prescribed for elections of city officers."

This act was approved June 4, 1895.

We do not think the provision that no vignette shall be used, furnished, or printed on any ballot was intended to apply to any other ballots than those for city officers. This provision is inserted in the section which provides for certification by the officers of city committees. There

is no express provision for certification to the commissioners of the county, and resort must be had to the general law to determine what certification shall be made.    Under the general law, a certification of a ticket with the vignette is required; and the provision requiring the election commissioners of the county to print all ballots intended for use in the city, in the manner prescribed for the election of city officers, we think, was not intended to exclude the right to the use of the vignette as a part of the ticket, or, in the language of the statute, as "a distinctive and characteristic heading thereto."    Pub. Acts 1895, Act No. 271, § 11.    This view is strengthened by the fact that by an amendment to the general election law, approved June 5, 1895, section 10 was so amended as to provide that the name of a candidate should not appear in more than one place on the ballot, as a candidate for the same office; and it is not to be doubted that this provision was intended to apply to the city of Detroit as well as to other portions of the State.

The writ will issue in accordance with this opinion.

The other Justices concurred.