STATE OF NORTH DAKOTA, EX REL CHARLES E. WOLFE, *vs.* FRED

FALLEY, SECRETARY OF STATE.

Opinion filed October 19th, 1900.

**Elections—Secretary of State—Certification of Candidates.**

> Under the statutes of this state, requiring the secretary of state to certify to the proper county officer the names of all persons whose nominations for office have been filed with him, such secretary has no judicial power to inquire into the regularity or legality of such nominations.

**But One Person Nominated by One Party—Convention Nominations.**

> But the statutes of this state contemplate that only nominations made by a convention representing a political party or principle shall be filed with such secretary, and, further, that only one person can be nominated by one party for a single office, and that the name of but one candidate for a single office shall appear upon the official ballot under one party heading. When, therefore, two nominations, purporting to be by the same political party for the same office, are filed with him, it is his duty to refuse to certify to the proper county auditors the names contained in both nominations. The law requires him, however, to certify the name of the regular party nominee, and, if he refuse so to do, he may be coerced by mandamus.

**Two Nominations for Same Office—Determination.**

> Where the judicial district central committee of a political party calls a judicial district convention for the purpose of nominating a district judge, and such convention divides, and two conventions are in fact held, and two nominations made and properly filed, each claiming to be the regular party nominee, the courts of this state will, upon proper application, determine which is the regular party nominee.

**Bolting Convention—Powers of Central Committee.**

> Where a judicial district central committee, in calling a district convention fix the time and place and the basis of representation thereto, said committee cannot go further, and dictate the manner in which, and conditions under which, the delegates to such convention shall be elected by the various counties. Such power belongs to the county central committees of the various counties, and delegates elected to said convention under the direction of the county central committee, and in conformity to the established usages of the party, are regular and lawful delegates, although not elected as directed by the district committee

Original application for mandamus by the state on the relation of Charles E. Wolfe v. Fred Falley, Secretary of State.

Writ granted.

*Cochrane & Corliss*, for relator.

A public officer charged with the duty of certifying nominations cannot conclusively determine who has been legally nominated so as to entitle his name to be certified. *State* v. *Miller,* 39 N. E. Rep. 24; *Williams* v. *Lewis,* 54 Pac. Rep. 339; *Shields* v. *Jacobs,* 50 N. W. Rep. 105; *State* v. *Allen,* 62 N. W. Rep. 35; *State* v. *Falley,* 8 N. D. 90; *Baker* v. *Board,* 68 N. W. Rep. 752. The secretary is not bound to certify all nominations apparently regular on their face, otherwise there could be, on the official ballot, two or more names purporting to be the candidates of the same party, for the same office, contrary to the spirit and intent of the ballot law. § § 491, 498, 502, 504, Rev. Codes; *State* v. *Weir,* 31 Pac. Rep. 417; *Baker* v. *Board,* 68 N. W. Rep. 752; *State* v. *Allen,* 62 N. W. Rep. 35; *Phelps* v. *Piper,* 67 N. W. Rep. 755; *State* v. *Piper,* 69 N. W. Rep. 373. The court may inquire on mandamus as to which of the two rival candidates is lawfully nominated by the party. *McDonald* v. *Hinton,* 46 Pac. Rep. 870; *State* v. *Tucker,* 46 Pac. Rep. 530; *State* v. *Johnson,* 46 Pac. Rep. 533. Unless a candidate has been regularly nominated by a party convention the law requires his name to be placed in nomination by petition, § 501, Rev. Codes, and no person who goes on the ballot by petition can select a party designation already in use by an existing political party. *State* v. *Rotwitt,* 46 Pac. Rep. 370; *Atkeson* v. *Lay,* 22 S. W. Rep. 481; *Philips* v. *Curtis,* 38 Pac. Rep. 405; *McCoach* v. *Whipple,* 51 Pac. Rep. 164. Therefore, if the court cannot, on mandamus, inquire into the question of fact as to who is the lawful nominee of the party, the whole policy of the law may be subverted.

*John F. Philbrick*, Assistant Attorney General, for defendant.

BARTHOLOMEW, C. J. On the application of Charles E. Wolfe, as relator, this court issued an alternative writ of mandamus directed to the Honorable Fred Falley, as secretary of state, directing him to certify to the proper county auditors the name of relator as the nominee of the Republican party for the office of district judge of the Fourth judicial district, or show cause for not so doing; said

district being composed of the counties of Richland, Ransom, Sargent, Dickey, and McIntosh. The facts upon which relator bases his claim as such nominee were set out at length in the alternative writ, and, omitting all formal parts, and stating only the facts that raise the controversy, are as follows: The judicial district Republican central committee in said district, in calling the judicial convention, fixed the time and place for holding the same, and the representation for the several counties composing the district, and then proceeded to direct that the caucuses in the various precincts in the several counties composing the district should be called for the special purpose of electing delegates to a county convention that should be held for the exclusive purpose of electing delegates to the judicial district convention, and declaring that the county conventions that selected delegates to the judicial convention should not elect delegates to any other convention or transact any other business, and declaring, further, that any delegates to the judicial convention not elected in conformity to such directions would not be recognized by said judicial committee, or permitted to participate in the preliminary organization of the judicial convention. It further directed that in case the proper county committees refused or declined to call the caucuses and conventions as directed, by a time specified, then the member of the judicial district committee for such county should proceed to call such convention, and provide for the election of delegates thereto. Relator alleges that in these special directions the said judicial district central committee exceeded its powers, and violated the usages of the Republican party in this state; that by said usages the various counties have each its own county Republican central committee, and that the calling of all county conventions, as well as all precinct, township, or ward caucuses within the respective counties, is within the exclusive control and management of such county committee; that the action of said judicial central committee in assuming to control the county conventions and the caucuses was without precedent, and in direct conflict with party usages in this state; and that said action had never been authorized by any representative convention of the Republican party in this state or in said judicial district. It is further alleged that said directions were disregarded by the county of Richland, which county was entitled to 17 delegates in the Republican judicial convention; that in said county a county convention was called by the proper county committee for the purpose of electing delegates to the Republican state convention, and for the purpose of electing delegates to the Republican judicial convention, and for the purpose of nominating candidates for the various county offices in said county; that caucuses were properly called throughout the county, and delegates elected thereby to attend the county convention; that said county convention met pursuant to call, and elected 17 delegates to said judicial convention, all of whom favored the nomination of relator as the Republican candidate for judge of said district, and the election of such delegates was duly and properly certified by

said county convention to said judicial district convention, and such certificate was duly filed with the proper officers before said convention met; that at the time and place appointed for said convention all of said delegates appeared, and also the delegates from the four other counties composing said district, but there was no contest as to the delegates from such other counties; that, when the delegates were called to order, the secretary of the judicial central committee read a list of the names of those who were entitled to vote and participate in the preliminary organization of the convention; that none of the delegates so elected from Richland county were named in said list, but in their stead 17 other persons, residents of Richland county, were named in said list as delegates from said county. It is alleged that the persons so named were never elected as such delegates by any convention, but that they were present as spectators, and to further the interests of an opposing candidate. It is further stated with particularity that when an attempt to organize was made there was an immediate split in the convention; that the delegates from the counties of Sargent and Dickey, 16 in number, together with the 17 men named by the secretary of the central committee, as aforesaid, as delegates from Richland county, proceeded to organize a convention, while the delegates from Ransom and McIntosh counties, 16 in number, together with the 17 delegates so as aforesaid elected from Richland county, and favorable to relator, proceeded to organize a convention. The first-named convention nominated one W. S. Lauder as the Republican candidate for district judge of the Fourth judicial district, and the other convention nominated the relator as such candidate; the vote in each convention being unanimous, and both of said nominations being regularly certified to the secretary of state. But relator claims that by reason of the facts stated he was and is the duly-elected and regular Republican nominee for such judgeship, having received therefor the vote of a majority of all the persons properly elected as delegates to such convention. It appears by notice and return on file in this court that a copy of the alternative writ was served upon W. S. Lauder. But upon the return day he was not represented, and, so far as appears, does not oppose this proceeding. But that fact does not relieve the situation. The defendant, the secretary of state, answers, expressly admitting the facts set forth in the alternative writ, and stating that he refuses to certify the name of the relator to the proper county auditors as the Republican nominee for judge of the Fourth judicial district, because there have been filed in his office two nominations for said office, each claiming to be the regular Republican nomination, and each regular in form and fair on its face.

It requires no argument to show that one political party cannot hold two separate conventions at the same time, and nominate two different persons to fill one office. If two nominations for the same office by the same party are filed, one or the other must be spurious. Both may be spurious, but both cannot be genuine. It is perfectly clear, from section 502, Rev. Codes, that the legislature never in-

tended that one party should have more than one candidate for any one office. The section declares: "No certificate shall contain the name of more than one candidate for each office to be filled." Section 504 requires the secretary of state to certify to the proper county auditors "the name and postoffice address of each person nominated for such office as specified in the certificates filed with him. But certificates can be filed with him only in pursuance of nominations made by a convention representing a party or a principle. Such is the clear purpose of the law. Sections 497a to 512, inclusive. But one party can make but one nomination for one office. Hence he can properly certify but one nomination by the same party. This is made clear by the provisions of section 491, which permits a voter to vote for the entire party ticket by marking a cross in the square following the party named. This the voter could not do if there could be two candidates for one office under the same party heading. From this it follows that it is the duty of the secretary of state to certify the genuine party nominee. See the case of State v. Weir, (Wash.) 31 Pac. Rep. 417. It becomes necessary, then, that there should be a final determination as to who is the real party nominee. Of course, the pleadings in this case admit that the 17 so-called delegates from Richland county, who voted for W. S. Lauder, were not legal delegates to said convention. That may establish the fact that Mr. Lauder was not the regular nominee of the Republican party, but it does not establish the fact that relator was such nominee. It will be noticed that the delegates to said convention aside from the Richland county delegates, were evenly divided between the two candidates, so that, unless the Richland county delegates who supported relator were legal delegates, he is not the nominee of the Republican party. The whole case turns, then, upon the legal character of that delegation; and that question, in turn, hinges upon the power of the judicial central committee. If that committee had the power to determine the manner in which, and conditions under which, the delegates to the judicial convention should be elected by the several counties, then clearly such Richland county delegation was not legal, as confessedly it was not elected in the manner or under the conditions prescribed by such committee. If, on the other hand, such committee had no such power, then such delegation was legal, because, confessedly, it was elected in conformity with established usage of the Republican party.

But who shall decide this question? We held in State v. Falley, 8 N. D. 90, 76 N. W. Rep. 996, that the powers of the secretary in certifying nominations that had been filed with him were ministerial only, and that he could exercise no judicial functions in that regard. Our reasons were there fully stated, and need not be repeated here. Where provisions are made by statute for filing objections with the certifying officer, he may have judicial functions. See State v. Miller (Ohio) 39 N. E. Rep. 24. But even under such a statute his powers are strictly construed and limited. See People v. District Court of Arapahoe Co. (Colo. Sup.) 31 Pac. Rep.

339. And under statutes similar to ours it is universally held that he has no judicial powers. See *Williams* v. *Lewis* (Idaho) 54 Pac. Rep. 619; *Shields* v. *Jacobs* (Mich.) 50 N. W. Rep. 105, 13 L. R. A. 760; *State* v. *Allen* (Neb.) 62 N. W. Rep. 35; *Baker* v. *Board* (Mich.) 68 N. W. Rep. 752. It follows, then that the secretary of state could institute no judicial inquiry to determine which of two or more nominations, all fair on their face, and all purporting to be the nomination of the same party for the same office, was in fact the regular nomination of such party. He clearly can certify only one name for one party for one office, because, as already seen, only one name can go on the ticket. It may be that under such circumstances he might certify any one of the nominations so filed with him, and, if no objection were made until after election, it might then be too late to question the legality of the nomination. We express no opinion upon the point. But where, as in this case, he refuses to certify the name of the person claiming to be the regular party nominee, the power must rest somewhere to determine whether or not such claim be well founded; and, if well founded, there must be power to compel the certification of such name, and such power can only exist in the courts. It is true that in the case of *State* v. *Falley,* supra, we held that, since the secretary could not exercise no judicial functions, where a nomination was filed with him, fair on its face, he must certify the name of the person therein specified, unless properly restrained, and that when called upon to do so he could not excuse himself by saying that such a nomination was not regular or legal. But it is plain that we used the language in the same sense in which it is used in section 504, which requires the secretary to certify the name "of each person nominated for such office as specified in the certificates of nomination filed with him." That means party certificates, because, in the contemplation of the statute, no other can be filed with the secretary. Where only one certificate of nomination, purporting to be the nomination of a certain named party for a certain named office, is filed with the secretary, it becomes as to him the party nomination, and he cannot question it. But it is self-evident that this cannot be true where two certificates are filed, each purporting to be the nomination of the same party for the same office. It is an uncontrovertible fact that there cannot be two nominees by one party for one office that is filled by one person. Hence one of such certificates, at least, cannot contain the regular party nomination. It requires no judicial investigation to determine that fact. It is patent and conclusive. He cannot certify both names, because both cannot go on the same party ticket. He is in duty bound to refuse to certify both. Perhaps he may properly refuse to certify either, as we understand he did in this case, but certain it is he must refuse one.

There has been some hesitation on the part of the courts to enter upon an investigation as to the party character of conventions. Where state conventions were held by two factions of a party, each having a complete political and party organization, with the appear-

ance of *de facto* parties, and each claiming to be the convention of the one party, the Supreme Court of Nebraska, under the statute in that state, refused to decide between the factions, but required both tickets to be placed upon the official ballot. · *State* v. *Allen*, 62 N. W. Rep. 35; *Phelps* v. *Piper*, 67 N. W. Rep. 755, 33 L. R. A. 53; *State* v. *Piper*, 69 N. W. Rep. 378. See, also, *People* v. *District Court of Arapahoe Co.*, and *Shields* v. *Jacobs*, supra. Is it true that those cases were decided, as the opinions show, under statutes that conferred judicial functions upon the certifying officer, and making his decision final unless reviewed as pointed out by the statute. But the decisions appear to have been based largely upon the proposition that each faction was a party, and entitled to appear on the ticket just as they would be with separate names. Yet those cases expressly recognize a different holding under different statutes. In *State* v. *Piper*, supra, it is said: "Decisions of other states which hold that courts will determine which faction of a political organization is the regular one and entitled to recognition were for the most part based upon statutes materially different from ours." And·again in the same case: "Yet the court, in a proper case, will determine whether nominations were in fact made by *de facto* conventions of the parties, even though the same may lead to the investigation of political methods." But, as holding directly that the regularity and legality of conventions will be investigated and determined by courts, see *Baker* v *Board* (Mich.) 68 N. W. Rep. 752; *State* v. *Rotwitt* (Mont.) 46 Pac. Rep. 370; *McDonald* v. *Hinton* (Cal.) 46 Pac. Rep. 870, 35 L. R. A. 152; *State* v. *Tooker* (Mont.) 46 Pac. 530. Indeed, under our statute,· which gives the certifying officer ·no judicial powers, and which requires party nominations to be filed with the secretary of state, and which contemplates that no nominations shall be filed with him except those made by political parties, it becomes absolutely necessary that the courts should pass upon the regularity of such nominations; otherwise, the door for fraud and deception must stand wide open, and no power exist anywhere to close it. Perhaps we were not justified in taking any space to demonstrate that this court had the power and it is its duty to act in this matter.

What were the powers of the Republican central committee of the Fourth judicial district? Could that committee invade the jurisdiction that had been exercised by county central committees since the organization of this state? Could it dictate to the county committees, and substitute its will for theirs, and in effect arrogate to itself the performance of all those duties that had hitherto pertained to county committees? We know of no basis for such a claim. We know of no powers possessed by such central committee, except to preserve the district party organization, and take the preliminary steps to insure the next succeeding convention, to-wit: to fix the time and place and basis of representation for such convention. To these may be added a power that has been sanctioned by a usage which may have existed long enough to require judicial notice, and

that is the power to so far pass upon the claims of contesting delegations as to say which, if either, shall participate in the preliminary organization. But in this case, under the conceded facts, there were no contesting delegations from Richland county. Aside from the delegates favorable to relator, there were no persons claiming to be delegates from that county claiming to have any authority from any convention or mass meeting or any other source. To hold that such committee might exclude the Richland county delegates favorable to relator, because not selected in the manner prescribed by that committee, would be to hold that such committee had power to prescribe such manner. But that power we deny. The language of the Supreme Court of California in *Hutchinson* v. *Brown,* 54 Pac. Rep. 738, 42 L. R. A. 232, is very instructive on this point. The court said: "One objection of the respondent is that by the call of the executive committee the People's Party convention was assembled for the purpose of nominating a full ticket, and, of course, a full ticket of Populists, and that if there was to be any fusion, or joint action with other parties, it was only to be the action prescribed by the executive committee, and put forth as part of the call for the convention. As to this, it is enough to say that, according to universal party usage in California, the central or executive committee of a party has no function, after one election is over, except to preserve the organization, and take the necessary preliminary steps for the assembling of the next convention. It has no right to forestall or in any manner limit or curtail the powers of the convention which it calls. The convention, when assembled, is the depositary of all party power, and so continues until it adjourns, after which a new committee comes into power for the mere purpose of subserving the party interests pending the election, and of doing thereafter such things as may be provisionally necessary to keep up the regular organization and call another convention. It is, therefore, of no consequence what resolutions the executive committee chose to couple with its call for the People's Party convention. They were merely advisory, and as advice, were worth just what the convention chose to rate them at."

We are clear that the Richland county delegates favorable to the relator were the legal and proper delegates from said county to said judicial convention, and that relator was nominated as a candidate for judge of the Fourth judicial district by a majority vote of all the delegates composing such convention, and in a convention in which all of such delegates participated or might have participated. Relator is therefore the regular nominee of the Republican party. Let the peremptory writ issue as prayed. All concur.

Young, J. (concurring). I agree with my associates that the writ should issue to compel the secretary of state to certify relator's name to the different county auditors as the Republican nominee for district judge of the Fourth judicial district. I reach this conclusion, moreover, upon ground which does not involve an investigation of the regularity of relator's nomination. It appears that two

certificates were filed in the secretary's office, one certifying the name of the relator, and the other that of W. S. Lauder, for the same office, and each purporting to be the regular Republican nomination.   Both certificates are regular in form.   Either certificate, if standing alone, is sufficient to require the secretary to certify down the name contained therein, without investigation.   His embarrassment arose from the fact that two certificates were filed, showing two candidates, and he could not certify both.   This ground for refusing to act existed at the time the alternative writ issued, but on the return day this excuse for refusing no longer existed.   The return filed by the secretary does not show it, but the fact is, and it was conceded on the hearing, that the relator's opponent, W. S. Lauder, was also nominated by the Independent and Democrat party for the same office, and that he had formerly notified the secretary of state of his acceptance of that nomination, and in writing had designated the "Independent and Democrat" column as the column in the official ballot in which he desired his name to appear.   This he was authorized to do, under section 491, Rev. Codes.   It is clear that thereafter the secretary had no authority to certify down the name of W. S. Lauder as the Republican nominee.   After such action, the certificate showing the nomination of the relator was the only one he could act on.   It is regular, and, being the only name he could certify, he had no discretion.   He was, in my judgment, obliged to certify it.   His duty was ministerial and entirely plain. He must look to the certificate filed as the basis of his right and duty to act.   In the present case no one contests the right of relator, except the secretary.   Relator's opponent for the Republican nomination, Lauder, makes no claim under the Republican certificate filed by him, and does not resist relator's right to have his name certified down as the Republican nominee.   Under these circumstances the duty of the secretary to certify it seems free from doubt, and his refusal to do so demands the issuance of the writ prayed for, but does not require a judicial inquiry into the regularity of the party proceedings from which relator's certificate of nomination emanated.

(83 N. W. Rep. 860.)