STATE *ex rel.* HOWELLS v. METCALF, County Auditor.

1. An organized political party cannot have at one time more than one candidate for the same county office.

2. The Supreme Court, authorized by Rev. Code Civ. Proc. § 764, to issue a writ of mandamus in certain cases, which writ section 765 provides must issue where there is not an adequate remedy in the ordinary course of law, may by such writ direct a county auditor which of two sets of nominees, each claiming to be the candidates of a certain political party, and certified as such by two conventions, to put on the ballot as the candidates of such party; he being required by Rev. Pol. Code § 1886, to put thereon such names as have been certified "in the manner provided by law," and there not being time for the remedy by application to the county court, under section 1889, to require the county auditor to correct errors in the ballot, and by subsequent appeal.

3. Judicial notice will be taken of customs and usages governing the creation and existence of political parties, which are matters of general knowledge and common information.

4. The county central committee of a political party called a convention for a certain time at a certain place, and a majority of the committee there-

after selected a building for holding it, of which all had notice. A minority of the committee selected another building. At the first place a convention was had, which was called to order by the chairman of the committee, and being organized in the usual manner, proceeded to make the nominations provided for in the call. At the second place certain delegates, who did not attend the other convention, met, were called to order by a member of the committee, organized, and made nominations for the same offices. Held, that the first convention was the regular convention, and its nominees were entitled to have their names placed on the ballot as the nominees for such party, and that it was immaterial that those attending the latter convention stayed away from the former for alleged fear of bloodshed, because there were numerous contesting delegates and because the committee favored the other faction.

5. Where the convention, certifying the names of certain persons as the candidates of a certain political party, is not the regular convention of such party, the names of such persons are not entitled to any place on the ballots.

6. Though by Rev. Pol. Code, § 1886, the county auditor is not required to have the ballots printed till ten days before the election, mandamus proceedings may be instituted before that time to compel him to put the names of certain persons thereon as the candidates of a political party; demand therefor having been made on and refused by him, and there not being sufficient time for the remedy, if proceedings be delayed till the time for printing.

(Opinion filed September 21, 1904.)

Original mandamus proceedings on the relation of Robert M. Howells against H. A. Metcalf, county auditor of Roberts county. Writ granted.

*J. J. Batterton* and *Horner & Stewart*, for plaintiff.

*Frank McNulty* and *Campbell & Taylor*, for defendant.

HANEY, J. On March 22, 1904, the regularly constituted central committee of the Republican party in Roberts county issued a call for a delegate convention to meet in Sisseton at

1 o'clock p. m., on April 5, 1904, for the purpose of selecting 28 delegates to the state convention, 28 delegates to the judicial convention, and to place in nomination candidates for the following legislative and county offices: One senator, 3 representatives, treasurer, sheriff, register of deeds, auditor, state's attorney, county judge, clerk of the courts, superintendent of schools, coroner, surveyor, 3 county justices, and 3 constables. The call was properly published. It recommended that precinct caucuses be held April 2d or at such time as might be fixed by the member of the county committee residing in the precinct, and at the place where the preceding spring election was held. It stated that "credentials should be handed to the chairman or secretary of the committee before the opening of the convention." At the time designated in the call numerous persons claiming to be delegates to the convention provided for therein appeard at Sisseton. Some of these persons repaired to the place selected by a majority of the county central committee, were called to order by the chairman of that committee, and having organized in the usual manner, proceeded to transact the business mentioned in the call. At the same time the other persons present in Sisseton, claiming to be delegates, assembled in another place, were called to order by a member of the county central committee, and, having organized in the usual manner, proceeded to transact the business mentioned in the call. The first mentioned assembly so organized was presided over by Mr. Howard Babcock, and will be hereafter termed the "Babcock convention" The other assembly so organized was presided over by Mr. A. M. Houck, and will be hereafter termed the "Houck convention." In due time the nominations for legisla-

tive and county offices, made by each of these conventions, were certified in proper form by the respective officers of such conventions as nominees of the Republican party in Roberts county, and each of these certificates of nomination was received and filed by the defendant as auditor. Subsequently the relator and his associate candidates, who were nominated by the Babcock convention, demanded of the defendant that their names be printed on the ballots to be used in Roberts county at the coming general election, in the Republican party column, and that the names of the persons nominated by the Houck convention be excluded from such ballots. This demand having been refused, the relator has applied to this court, upon notice, for a peremptory writ of mandamus commanding the defendant to comply with such demand.

The writ of mandamus may be issued by this court to any inferior tribunal, corporation, board, or person to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station. Rev. Code Civ. Proc. § 764. The writ must be issued in all cases where there is not a plain, speedy, and adequate remedy in the ordinary course of law. It must be issued upon affidavit, upon the application of the party beneficially interested. Id. § 765. It is an official duty of the auditor, which the statute specially enjoins, "to provide printed ballots for every election in which the voters of the entire county participate." All official ballots are to be white in color, of good quality of printing paper, and to contain the name of every candidate whose nomination has been certified by the Secretary of State or filed with the county auditor in the manner provided by law; but the name of no candidate shall appear more than once on the ballot for the

same office.   "The names of candidates for each office shall be arranged in large type under the designation of the party or principle for which said nomination is made, so that all the names of candidates of each party shall be in a separate column, and each party ticket shall be printed side by side on the ballot with names of candidates for each office directly opposite each other; and the names of all independent candidates shall occupy a column separate from regular party tickets. There shall be a circle printed at the head of each ticket on the ballot; also a circle at the left of the name of each candidate on the ballot, and no other circle shall appear on the ballot." Rev. Pol. Code, §§ 1886, 1892.   Where, as in this state, the voter may express his choice for all the candidates in a party ticket by merely making a cross in the circle over the head of a party column (Id. § 1914), the practical advantage of having a candidate's name printed in a party column is apparent, and whether it shall be so printed presents a question of substantial right.   At the coming general election in this state the Republican column will embrace the names of candidates for presidential electors, congressmen, judges, and state officers. It can embrace the names of only one set of county candidates. In counties where only one set of Republican county candidates have been nominated in the manner provided by law, the duty of the auditor to print their names in the Rupublican column will be clear and unquestioned.   In the county of Roberts, however, there are two certificates of nomination on file in the auditor's office, each regular on its face, each containing a set of county candidates, and each purporting to have been nominated by the Republican party.

When the legislation under consideration was enacted the

existence of organized political parties, governed by generally recognized rules, and perpetuated by well-known methods, was disclosed by the current history of the country. Hence, where the word "party" occurs in the statute relating to nominations, it should be construed to mean a number of persons united in opinion and organized in the manner usual to the then existing political parties. Mindful of this definition, it seems to us to be self-evident that a party—that is, an organized political party— cannot have, at the same time, more than one candidate for the same county office. The acts of an organized political party, with respect to the selection of candidates for public office, must be regarded as the acts of the electors constituting such organization, and the statute expressly declares that no person shall join in nominating "more than one person for any place to be filled." Rev. Pol. Code, § 1903. Whenever an elector joins, through a convention or by petition, in nominating a candidate other than the one nominated by the party organization, he by that act ceases to be a member of the organization with respect to such nomination, and the candidate he has joined in nominating cannot be regarded as representing the organization. A convention, within the meaning of the statute relating to nominations, "is an organized assembly of delegates or electors representing a political party or principle." Such a convention "may nominate candidates for public offices to be filled by any public election within this state." All nominations made by such convention are required to be certified in a prescribed manner, the certificate of nomination to "designate in not more than five words the party or principle which such convention represents"; and if the certificate relates to county officers it shall be filed with the county auditor. Id. §§

1899, 1900, 1901. Then as the auditor is required to print only such names as have been certified or filed "in the manner provided by law," and only one set of county candidates can be in the Republican column, some one must decide which, if either, of the conventions held in Roberts county, represents the Republican party. Such a controversy as has here arisen may not have been anticipated by the Legislature. It did, however, provide for the correction of errors on the part of the auditor, and thus clearly indicated that his decision respecting such a controversy should not be regarded as final. The statute reads as follows: "Whenever it shall appear by affidavit that an error has occurred in * * * the printing of the sample or official ballots, the judge of the county court shall, upon application of any voter, by an order, require the county auditor or other public official or board charged with the duty of preparing ballots, to correct such error or show cause at such time and place as under the circumstances he may deem necessary, why such error should not be corrected." Id. § 1889. Having thus clothed the county judge with power to review the auditor's action, it is clear the Legislature did not intend to preclude interested parties from invoking the aid of the courts in enforcing their legal rights with respect to the preparation of ballots; and as an application to the county judge in the present case would not have afforded an adequate remedy, because of the delay incident to any proper procedure for bringing his decision here for review, this court undoubtedly has authority to control the auditor's action by means of a peremptory writ of mandamus.

Whenever the Legislature in its wisdom sees fit to regulate nominations and the printing of ballots by statutory enact-

ments, the duty of interpreting such enactments devolves upon the courts, and they should not attempt to escape responsibility or avoid disagreeable consequences by assuming that no judicial questions are involved. The auditor's duties and the candidate's rights respecting the preparation of ballots having been defined by statute in this state, the performance of such duties and the protection of such rights no longer present merely political questions, but must be dealt with as are other legal duties and other legal rights. So we are compelled to conclude that it is the duty of this court in this proceeding to determine which, if either, of these sets of candidates is entitled to be recognized as representing the Republican party in Roberts county.

Where a custom or usage is of such notoriety and obtains so extensively as to be a matter of general knowledge and common information, judicial notice is taken thereof by the courts. 17 Am. & Eng. Ency. of Law 945. There are such customs and usages governing the creation and existence of all organized political parties in this country. A party having been organized by the meeting of electors or delegates, its organization is perpetuated by the appointment of a committee, which is clothed with authority to act for its members until they are again assembled and otherwise direct. The existence and authority of such committees are recognized by our statutes, which provide that, where any person nominated dies or declines before the ballots are printed, the vacancy thus or otherwise caused may be (if the original nomination was made by a party convention which delegated to a committee the power to fill vacancies) filled by such committee. Rev. Pol. Code § 1908. Therefore, from the adjournment of one conven-

tion until the temporary organization of another, the national, state, or county committee, as the case may be, represents and is alone authorized to act for the organization which appointed it. Such a committee existed in Roberts county. Its regularity is unquestioned. Its authority to fix the time and select the place of holding a convention for the nomination of county officers must be conceded, because the claims of each faction rest on the validity of the call issued by such committee. As is not unusual, the call named the city, but not any particular building, in which the convention would be held. A majority of the committee concurred in the selection of the Opera House, and it is not suggested that any one claiming to be a delegate did not know that such place had been so selected.

These facts concerning the organization of the Babcock convention are established by the pleadings: At the time fixed and in the place selected by the county committee, its chairman, with the concurrence of a majority of the committee, called the persons there assembled to order. The call was read by the secretary of the committee, and thereupon a temporary chairman, secretary, and the usual committees were selected. The report of the committee on credentials having been adopted without objection or protest from any one present, a permanent organization was effected, and the convention proceeded to transact the business for which it was convened. Defendant admits in his answer that none of the delegates composing the Houck convention sought admission to the other, and alleges that none of the delegates attending the Babcock convention sought admission to or attended the Houck convention. It needs no argument to show that the Babcock convention, thus called and organized, was regular, and should

18 S. D.—26

be so regarded, in the absence of anything which justified a majority of the whole number of delegates in refusing to attend at the place selected by the committee.    The reasons assigned for such refusal are thus stated in defendant's answer: "That on account of the fact that a majority of said [central] committee were thus interested [as candidates] in the result of the convention in said county, and were so violently and bitterly opposed to the portion of said party whose convention was presided over by said A. M. Houck, and on account of the Babcock faction having already instituted groundless contests and causing to be elected contesting delegations in said 19 different voting precincts in said county, thus preventing the delegates from said contested precincts from participating in the organization of said convention, and as no place for the holding of said convention was designated in the call, the said Houck faction determined, for said reasons, and for the further reason that an unseemly riot and possibly bloodshed would thereby be averted, to hold said Republican convention in a public hall on Main street in Sisseton." So it appears that the Houck faction remained away from the regular meeting place (1) for fear of bloodshed, (2) because there were numerous contesting delegations, and (3) because the central committee favored the opposing faction.

The first reason can hardly be taken seriously.    It affirmatively appears that none of the Houck delegates entered or attempted to enter the Opera House, and nothing is disclosed which would warrant the inference that they would have been excluded, had they attempted to do so.    Surely it should not be presumed that such gentlemen as are usually chosen for delegates to Republican conventions in Roberts county neces-

sarily resort to bloodshed when they disagree concerning the selection of delegates to a state convention. The law wisely presumes, in absence of evidence to the contrary, that no person intends to commit crime or to do any wrongful act, and we trust the time will never come in this state when the conduct of delegates to political conventions must be viewed in any other light.

The other two reasons are equally, though perhaps less palpably, untenable. They rest on the assumption that, if all the persons claiming to be delegates had assembled in the Opera House, an erroneous decision would necessarily have been rendered regarding who were entitled to seats in the convention. Doubtless the decision of conventions concerning credentials are frequently erroneous, and occasionally arbitrary and unjustifiable. Even the judgments of judicial tribunals are sometimes so regarded, especially by unsuccessful litigants. But all this does not justify the presumption that any tribunal will decide erroneously, in the absence of substantial grounds for anticipating such a result. When a man is sued he must appear and defend, or judgment will be taken against him by default. If he believes the court or judge is prejudiced, or otherwise disqualified, he must appear and preserve his rights by timely objections, provided, of course, the tribunal has jurisdiction of the matter involved. In the case at bar the persons claiming to be delegates were duly notified to appear at the Opera House for the purpose of organizing the convention. When the hour of meeting arrived, it was, we think, the right and duty of the chairman of the central committee, or some other person authorized by that committee, to call the assembly to order. The next step would be the selection of a tem-

porary chairman.    If different persons arose for the purpose
of nominating such officer, some one would necessarily have to
decide which of those persons was entitled to recognition, and
if a division or roll call were demanded some one would neces-
sarily have to decide who were entitled to vote.   It being a con-
vention of an organized party, and the central committee being
the only body authorized to act for the organization at that
moment, we think it would be entirely proper for such commit-
tee, following the practice of the national committee, to deter-
mine who should participate in the temporary organization by
having prepared a temporary or prima facie roll of delegates.
Then, when a temporary organization was effected, it would be
for the convention itself to determine the qualification of its
own members.    Such a temporary roll of those deemed to have
a prima facie right to seats is prepared in advance of the meet-
ing of Congress and of the state Legislature; the former and
each branch of the latter being, of course, the conclusive judge
of the qualification of its own members when organized.    But
whether this procedure be adopted, or the other, which con-
fides all questions relative to both temporary and permanent
organization to the delegates present, it was clearly incum-
bent upon all who claimed to be delegates to at least appear
and demand recognition, whether or not they delivered their
credentials to the committee.    In the absence of such a demand
they are clearly precluded from assuming that their rights
would have been ignored by the convention, even if they were
disregarded by the committee.    Having refrained from attend-
ing at the proper time and place, they are in precisely the
same position as if no delegates had been selected in the pre-
cincts they claimed to represent, in which case the convention

would be at liberty to seat electors residing therein, as did the Houck convention, with respect to several precincts from which no one appeared claiming to have been chosen at any caucus or otherwise. Therefore, upon the undisputed facts, we conclude that the Babcock convention was regular; and, as the party could hold but one convention for the same purpose, it alone must be regarded as representing the Republican party in Roberts county.

It appears from the record in this proceeding that the same conclusion was reached by the Republican state convention and the Republican judicial convention in the Fifth judicial circuit, to each of which each of these rival county conventions sent delegates demanding recognition as the regular Republican organization. It is, however, unnecessary in the view we have taken to consider whether the decision of the highest tribunal within the party organization in this state concerning the issue here presented should be deemed conclusive, and we express no opinion as to that contention, which has the support of well-reasoned cases in other jurisdictions. Nor do we now determine to what extent an investigation of the facts leading up to and involved in the organization of a convention should be pursued, where the regularity of such convention is put in issue. No opinion is expressed concerning the method of either faction in regard to the conduct of caucuses or initiation of contests. We merely decide upon undisputed facts that the Babcock convention is regular, because those who alone could attack its regularity waived their right to do so by failing without any valid excuse to assert their claims at the proper time and place.

Under the provisions of the statute heretofore cited, only

the names of such candidates as are nominated in the manner provided by law can be printed on the ballots. Nor can the name of any candidate be written thereon whose nomination has not been properly certified. Chamberlain v. Wood, 15 S. D. 216, 88 N. W. 109. Only "an organized assembly of delegates or electors representing a political party or principle" can file such certificate of nomination as we are considering, and the certificate must designate the party represented. If the Houck assembly did not represent the Republican party, and we have shown that it did not, what party did it represent? Its certificate of nomination reads thus: "This is to certify that on the 5th day of April, 1904, a convention of delegates of the Republican party in and for the said county of Roberts and state of South Dakota was duly assembled at Sisseton, in said county; that upon the organization of said convention A. M. Houck was elected chairman and J. A. Le Lacheur secretary; whereupon said convention proceeded to nominate the following named persons, whose residence and business address is stated opposite each name, for the office designated, respectively: * * *" No new party was organized. No principle was designated in its certificate. If it was not the Republican county convention, it had no existence as a convention within the meaning of the statute. By its certificate of nomination it authorized and directed the auditor to print the names of its candidates in the Republican party column. It authorized the doing of nothing else, and having ceased to exist without conferring power on any one to change its certificate, the same becomes wholly inoperative. It is not a case of mistake in drafting a certificate, which might be amended by those who signed it. The instrument accurately expresses the intent and pur-

pose of the assembly which caused it to be filed. Its invalidity is a matter of substance, not of form. It is without force or effect, because the assembly was without power to act for the Republican party. . Briefly stated, the situation is simply this: The Republican party in Roberts county did not nominate the Houck candidates. The Houck certificate does not authorize the auditor to print their names under any other party designation. Therefore it is his duty to exclude their names from the ballots. No other conclusion can be drawn from the plain and unmistakable language of the statute. Moreover, to print the names of candidates not nominated by the Republican party at any place on the ballots, under the designation of that party, would be precisely such a misrepresentation and deception as the Australian ballot system is designed to prevent. Of course, the view we have taken does not deprive the requisite number of electors from placing the names of the persons nominated by the Houck assembly on the ballots as independent candidates by petition.

Statutes regulating the methods of nominating candidates, and providing for the use of secret ballots to be officially prepared and furnished at public expense, have been enacted in nearly all the states. The decisions which involve the interpretation of such enactments are numerous. While designed to effect the same general objects and similar in many features, these statutes are by no means identical in terms. Hence the law in any particular jurisdiction can be accurately determined only by reference to the language employed in expressing the legislative will. As such language differs in different states, and equally enlightened minds disagree concerning the meaning of the same language, there has necessarily arisen much

apparent conflict in the case law on these subjects. The proceeding at bar must be governed by the laws of this state. Being satisfied that our own law has been correctly interpreted and properly applied, we might, with confidence and propriety, rest this decision alone on the reasons already stated. However, as the views herein expressed have the support of abundant authority, a few leading cases will be reviewed and others cited.

In North Dakota, where the statutes on these subjects are probably more nearly the same as here than in any other state, it is held that when two nominations, purporting to be by the same political party for the same office, are filed with the Secretary of State, it is his duty to refuse to certify to the proper county auditors the names contained in both nominations, the law requiring him, however, to certify the name of the regular party nominee; and, if he refuses so to do, he may be coerced by mandamus. State v. Falley, 83 N. W. 860. In this case, after defining its own powers and duties, the court proceeded to determine which was the regular candidate according to the customs and usages which govern political organizations. The following excerpts from the opinion are pertinent and convincing: "It requires no argument to show that one political party cannot hold two separate conventions at the same time, and nominate two different persons to fill one office. If two nominations for the same office by the same party are filed, one or the other must be spurious. Both may be spurious, but both cannot be genuine. It is perfectly clear, from section 502, Rev. Codes, that the Legislature never intended that one party should have more than one candidate for any one office. The section declares: 'No certificate shall contain

the name of more than one candidate for each office to be filled.'
Section 504 required the Secretary of State to certify to the
proper county auditors·'the name and post office address of
each person nominated for such office as specified in the cer-
tificates filed with him.' But certificates can be filed with him
only in pursuance of nominations made by the convention rep-
resenting a party or a principle. Such is the clear purpose of
the law. Sections 497a to 512, inclusive. But one party can
make but one nomination for one office. Hence he can proper-
ly certify but one nomination by the same party. This is made
clear by the provisions of section 491, which permits a voter
to vote for the entire party ticket by marking a cross in the
square following the party named. This the voter could not
do if there could be two candidates for one office under the
same party heading. From this it follows that it is the duty
of the Secretary of State to certifiy the genuine party nomi-
nee. See the case of State v. Weir (Wash.), 31 Pac. 417. It
becomes necessary, then, that there should be a final determi-
nation as to who is the real party nominee. * * * But who
shall decide this question? * * * Where only one certificate
of nomination, purporting to be the nomination of a certain
named party for a certain named office, is filed with the Secre-
tary, it becomes as to him the party nomination, and he can-
not question it. But it is self-evident that this cannot be true
where two certificates are filed, each purporting to be the nom-
ination of the same party for the same office. It is an uncon-
trovertible fact that there cannot be two nominees by one par-
ty for one office that is filled by one person. Hence one of such
certificates, at least, cannot contain the regular party nomina-
tion. It requires no judicial investigation to determine that

fact. It is patent and conclusive. He cannot certify both names, because both cannot go on the same party ticket. He is in duty bound to refuse to certify both. Perhaps he may properly refuse to certify either, as we understand he did in this case, but certain it is he must refuse one. .* * * Indeed, under our statute, which gives the certifying officer no judicial powers, and which requires party nominations to be filed with the Secretary of State, and which contemplates that no nominations shall be filed with him except those made by political parties, it becomes absolutely necessary that the courts should pass upon the regularity of such nominations; otherwise, the door for fraud and deception must stand wide open, and no power exist anywhere to close it. Perhaps we were not justified in taking any space to demonstrate that this court had the power, and it is its duty, to act in this matter.'' The nature and scope of the inquiry in this class of cases is thus defined in State v. Porter, 91 N. W. 944: ''In determining which of two sets of nominees of a split political convention are entitled to have their names placed upon the official ballot as the party nominees, the inquiry of the court should be limited to ascertaining which of the conventions from which the nominating certificates emanate is the regular one, and should not extend to an examination of political methods and tactics further than is necessary to ascertain the identity of the regular party convention.''

It was held in State v. Allen, 43 Neb. 651, 62 N.W. 35, that, where two factions of a political party nominate candidates and certify such nominations to the Secretary of State in due form of law, the latter will not inquire into the regularity of the convention held by either faction, but will certify to the several

county clerks the names of the candidates nominated by each; such practice being in harmony with the rule which requires courts, in case of doubt, to adopt that construction which affords the citizen the greater liberty in casting his ballot. The doctrine thus stated was, however, modified in a later case, where the court says: "Although the courts will not decide which of two rival conventions is the regular convention of the party when both were called and held in accordance with the precedents and usages of the party, and each claiming in good faith to represent the party, since that is not a subject of judicial inquiry, yet the courts, in a proper case, will determine whether nominations were in fact made by a de facto convention of the party, even though to do so may lead to an investigation of political methods." State ex rel. Rose v. Piper, 69 N. W. 384. In a still later case the same court decided that a nomination made by 4 out of 28 members of a county committee chosen by a political party is invalid, where previous notice of the time and place of the meeting had not been given to the other members. State ex rel. Whedon v. Smith, 77 N. W. 384. And in another case the Supreme Court of Nebraska concedes that "where the ballot law requires the names of candidates of political parties to be arranged and printed on the official ballot in a separate group, and it is made the duty of the election officer, in arranging the ballot, to place the ticket of the party having the greatest number of votes at the last preceding election first on the ballot, and that the position of other tickets should be controlled relatively by the same rule, it is obvious that under such a law it is necessary to decide between rival factions of the same party, in order to determine the position of the tickets upon the ballot." State ex rel. Dahlman v. Piper, 69 N. W. 378.

In Michigan, where State v. Allen, supra, seems to have been once approved, the Supreme Court uses this language: "The reluctance of the courts to enter upon an inquiry, or to permit an inqury by the election commissioners, into the question of fact as to which of two contending factions truly represents a political party, has been manifested in various cases. State v. Allen (Neb.), 62 N. W. 35; Phelps v. Piper (Neb.), 67 N. W. 755, 33 L. R. A. 53, and Shields v. Jacob, 88 Mich. 164, 50 N. W. 105, 13 L. R. A. 760.    In Shields v. Jacob it was held that the court would not undertake to determine which of two rival conventions resulting from a split in a regularly called convention should be treated as the regular convention of the party, and a mandamus was issued requiring the election commissioners to give to both tickets a place upon the ballot. At the time that decision was rendered, however, the provision requiring that the ticket of the party having the greatest number of votes within the county at the last preceding election should be placed first upon the ballot, and that the position of other tickets should be governed relatively by the same rule, was not a part of the statute, and it was not necessary to determine which of these tickets should be placed first on the ballot.    Under the law as it now exists, such an investigation seems necessary, and it would seem that the commissioners did determine the question, and place the Shelby ticket second on the ballot." Baker v. Board, 68 N. W. 752.

The following cases may be cited as sustaining the view taken in State v. Allen, supra: People v. District Court, 18 Colo. 26, 31 Pac. 339; Sims v. Daniels, 57 Kan. 552, 46 Pac. 952, 35 L. R. A. 146; State v. Johnson, 18 Mont. 556, 46 Pac. 440.

In People v. District Court two rival state tickets were involved, and no allusion is made to what position either should have on the ballots. Sims v. Daniels has to do with county candidates, but no question concerning the position of their names is discussed; the decision merely relating to what may be determined by the officer charged with the duty of considering objections to nominations under statutory provisions essentially different from any in this state. State v. Johnson relates to rival state tickets having different designations, with no reference to the position of either on the ballots. In a later case the Supreme Court of Montana holds that a party convention of a single county, which is one of two or more counties composing a judicial district, has no authority to place in nomination a candidate for the office of district judge; that being a state office, the legal nomination to which can only be made by a convention representing all the voters of the party in the several counties in the district. The court employs this language: "A candidate certified as nominated by electors is not nominated by a political party. He is simply a candidate of those individual electors who have joined in nominating him, and he is only entitled to be placed upon the ballot as such candidate. * * * The certificate to the Secretary of State emanating from a convention or primary meeting must be signed by the officials of the convention. The certificate of nomination by electors must be signed by the electors only. The certificate emanating from the officers of a convention clearly must designate the principle or party represented by the convention. By means of this designation in the convention certificate the Secretary of State specifies the description of the person nominated, including his party designation. But the law, except,

perhaps, in cases presenting unusual conditions, does not authorize electors who may make a nomination by petition to make their nominees the nominees of an organized political party whose name they may select, provided such party is authorized to make a nomination by convention or primary meeting held for the purpose of making nominations. The Secretary of State, therefore, cannot certify a candidate so nominated by electors as the candidate of a political party; for clearly he is not such a candidate, and has no place in a group of candidates certified as nominated by a regular political party convention or organization, under the name of the party making such nominations. We find authority for these views in the cases of Atkeson v. Lay (Mo. Sup.), 22 S. W. 481, and Philips v. Curtis (Idaho), 38 Pac. 405. We conclude, under the facts of this case, that the Republican conventions of the district have not nominated Judge Reeves as their candidate; and it being our opinion that the attempts to make him the candidate of such parties by petition are invalid, and as the court is not requested to regard him as an independent or electors' candidate, it necessarily follows that the writ of injunction prayed for will be made permanent; and it is so ordered." State v. Rotwitt (Mont.), 46 Pac. 370.

In no case, so far as our research has extended, where the right of the candidate to have his name printed in the party column was considered, has any court declined to enforce such right, though its enforcement involved a determination of the regularity of his nomination, except in Michigan, where the question was left to the decision of the election commissioners (Stephenson v. Board, 76 N. W. 914); a disposal of the matter which does not seem to be consistent with the views expressed

by the same court in Baker v. Board, supra.   Whenever the right of the candidate to have his name printed in the regular party column exists, and such right is contested, some one must necessarily decide the contest.   As we have shown, even in jurisdictions where the doctrine of State v. Allen, supra, prevails, the courts have not hesitated to determine the question of regularity when its solution merely involved undisputed facts and generally recognized rules relating to the organization of political parties.   We do nothing more than that in the present proceeding.   In difficult cases it may be convenient, but is it logical, to say that because two factions of a political party have attempted to nominate candidates, each claiming to represent the party organization, the names of both sets of nominees should be printed on the ballots, so that the electors may decide between them?   Is not the proposition predicated upon a misconception of the real issue involved?   It is for the party to nominate; for the people to elect.   The question is not who shall be chosen to any particular public office.   That is for the voters of all political parties to determine at the polls.   It is simply who shall represent the organization as its nominees, and certainly the determination of that question should be controlled by the action of the party itself; otherwise, party nominations are impossible.   To what extent, if at all, the rights of organized political parties should be recognized and regulated by law, is a matter of public policy, to be determined by the legislative department; a matter which does not concern this court.   Its duty is done when it gives effect to the legislative will as expressed in statutes which do not conflict with any provision of the federal or state Constitution.

It appears from the statements of counsel that the Babcock candidate for register of deeds has died since this proceeding was commenced. The Babcock convention delegated authority to its central committee to fill vacancies. If any doubt exists as to the form of such committee's certificate relative to the office of register of deeds, another can be filed setting forth the original candidate's death as the cause of the vacancy. Therefore this feature of the controversy demands no further attention.

It is contended that, whereas, sample and official ballots are not required to be printed and in possession of the auditor more than ten days before the day of election (Rev. Pol. Code § 1886), defendant has until that time to decide how the ballots shall be prepared, and that this court is without authority to issue its writ before the ballots are in fact prepared. This is untenable. Had the relator delayed his demand until ten days before the day of election, his rights and those of his associates might have been lost, or the county put to the useless expense of printing erroneous ballots. Having made his demand, concerning which no doubt exists in this case, if the auditor did not express a willingness to comply therewith, it was proper to institute this proceeding, when, if defendant intended to comply with the demand, he might have disclosed such intention and have avoided any judgment for disbursements. But, having answered and contested the relator's right, he cannot be heard to say that he would or might have complied with the relator's demand.

It follows that the relator is entitled to a peremptory writ of mandamus commanding the defendant to print the names of the Babcock candidates in the regular Republican column on

all ballots to be used at the coming general election in Roberts county, and to exclude the names of the Houck candidates therefrom, unless, within the period prescribed by statute, they shall be hereafter nominated as independent candidates by petition. He is also entitled to recover his taxable disbursements, but no statutory costs. Kirby v. Circuit Court, 10 S.D. 196, 72 N. W. 461; In re Kirby, 10 S. D. 416, 73 N. W 908.

Let judgment be entered accordingly.