(83 N. W. Rep. 864.)

---

## STATE, EX REL HANS FOSSER *vs.* ANDREW J. LAVIK.

Opinion filed October 26, 1900.

### Elections—Refusal to File Certificate of Nomination—Mandamus.

Where a county auditor refuses to receive and file the certificates of nominations for county officers made by a political party entitled to a column upon the official ballot, this refusal is a matter publici juris. It involves the right of the citizen to vote for the nominees of the political party of his faith. It involves the exercise of the elective franchise, and indirectly involves the election of every candidate in that column upon the official ballot. This court has jurisdiction to issue an original writ of mandamus in such a case.

### Political Questions—Parliamentary Rulings.

Judicial tribunals cannot pass upon the correctness of parliamentary rulings or tactics adopted in a political convention. Such questions are purely political. Courts can determine in this behalf only whether or not an assembly is a political convention organized as the law requires.

### Minority of Convention Cannot Withdraw and Organize a Legal Party Convention.

A political convention is the exclusive judge of the credentials and qualifications of persons claiming to be delegates thereto, and a minority of the delegates, as thus determined by the convention, cannot, by withdrawing from said convention and joining themselves to the persons whose credentials have been rejected by the convention, constitute a legal party convention.

Application for a writ of mandamus, on the relation of Hans Fosser, against Andrew J. Lavik.

Writ granted.

*F. H. McDermont, W. J. Maher,* (*Cochrane & Corliss* of counsel), for relator.

*L. N. Torson* and *P. J. McClory,* for respondent.

BARTHOLOMEW, C. J.   One Hans Fosser, as relator, made an original application to this court for a writ of mandate to the auditor of Pierce county, commanding said auditor to receive and file a certain certificate of nomination, purporting to be the certificate of nomination for county offices for said Pierce county made by the Republican party of said county, and to print such nominations upon the official ballot.   The alternative writ was issued, and upon the return day the defendant, by his counsel, moved to quash such writ on the ground that this court had no original jurisdiction of the case, for the reason that the case was not of such strictly public concern as is required by section 5165, Rev. Codes.   It is true, this case involves directly only the nomination and election of county officers, but necessarily and inseparably connected therewith is the right of the citizen to vote for the regular nominees of his political party. It involves the exercise of the elective franchise,—the most sacredly guarded franchise granted by the state.   Indirectly, it involves the election of all the candidates named in the Republican column upon the official ballot, whether state, district, or county nominees, for the reason that the number of Republican votes cast in said county will depend to some extent upon who appear in the Republican column as the Republican candidates for the local or county offices. For these reasons, we think the matter is publici juris.   As was said in effect in *State* v. *Nelson Co.,* 1 N. D. 101, 45 N. W. Rep. 33, the court will judge for itself whether the wrong complained of is of the nature that requires the interposition of this court.   The motion to quash is denied.

Defendant also answered to the alternative writ.   From the writ and answer it is clear that when the Republican county convention of Pierce county convened in said county on September 29, 1900, it was composed of two factions, bitterly opposed, and the ultimate result was a division; each faction claiming to be the Republican county convention, and each nominating a full list of county officers. The certificate of nomination as made by one faction was duly presented to, and received and filed by, the auditor.   Subsequently the certificate of nominations as made by the other faction was presented to the auditor, but he refused to receive the same upon the ground that the certificate of nominations made by the Republican county convention was already on file.   It is clear that the one duty of the court in this case is to determine which faction, if either, constituted the *de facto* Republican convention.   It is not our province to correct parliamentary errors, or to scrutinize the parliamentary methods by which an organization of a convention was secured, if only an organization of the Republican county convention was effected.   A mass of affidavits has been presented to us, but we accept the statement of facts as found in defendant's brief, adding thereto

only matters that are undisputed. The call for the convention was regular in all respects, and fixed the total number of delegates from the county at 19. The caucuses were duly held, and delegates properly elected from all the precincts except one. In that precinct one Dolan was elected, not by ballot, as required by section 497a, Rev. Codes, but by a *viva voce* vote of the electors present. On the day appointed for the convention the county Republican central committee met, in pursuance of usage, to determine what delegates were entitled to participate in the preliminary organization. That committee rejected Dolan's credential,—whether rightly or not, we must not inquire. The delegates were called to order by the chairman of the central committee, and, on the nomination for temporary chairman, there was a tie vote of 9 to 9. The chairman of the central committee assumed the right to decide the tie,—whether rightly or not, we need not say, because the election of the temporary chairman was immediately acquiesced in by the entire convention. A temporary secretary was then nominated and elected by the unanimous vote of all the delegates. It is clear at this point that a temporary organization of the convention had been effected. The assembly was no longer an unorganized body of delegates. It was a convention. Whatever business that convention might transact must be transacted through the instrumentality of the organization thus effected, or of some organization that might by a vote of the convention as thus organized be substituted for the then existing organization. The convention, acting upon these self-evident propositions, at once proceeded with the appointment of the usual committees for such occasions. There was no contest, except as to the committee on credentials. Upon the motion that the chair appoint such committee, the vote stood 9 to 9; and the chair, after having voted as a delegate, assumed the right, as chairman, to vote again, and decide the vote in favor of the motion. We need not waste a moment in condemning this course. This court is not interested in determining whether or not that convention was conducted according to strict parliamentary rules and usages. Such questions are foreign to the powers of judicial tribunals. They are political, purely. We are interested only in determining whether or not such convention was the Republican county convention, and as to that there can be no doubt, upon conceded facts. The committee on credentials presented a report rejecting the credentials of Mr. Dolan, who had already been rejected by the central committee, and also rejecting the credentials of one McDonough. The motion to adopt this report was carried by a vote of 9 in the affirmative to 8 in the negative; the chair refusing to count the vote of McDonough in the negative. That convention was the exclusive judge of the qualifications of its own members, and by that vote it conclusively determined that there were 17 qualified delegates elected to that convention, and no more, and that Dolan and McDonough were not delegates legally elected and qualified to sit in said convention. When this was definitely determined, the 8 delegates, who were thus left a minority

faction, and all of whom had participated in the preliminary organ-
ization and in every move of the convention up to this point, without
any motion to adjourn, or any public announcement of any intention
to withdraw, quietly left the room, and, calling to them the 2 men
who had been rejected by the convention, they proceeded to another
room, and assumed to organize themselves into a convention, and
nominated a full list of county officers; and the parties who acted
as chairman and secretary of such assumed convention executed a
certificate of nomination, fair on its face, and purporting to be the
nominations made by the Republican county convention for the
offices therein specified. The certificate was received and filed by the
auditor. The 9 delegates remaining in the regular convention, and
being a majority of the delegates entitled to seats in that convention,
proceeded to nominate county officers; and a certificate of such
nomination, fair on its face, and purporting to be the certificate of
nominations made by the Republican county convention for said
Pierce county, was presented to the auditor, who refused to receive
or file the same, for the reason that the certificate of nominations
made by the Republican county convention was already on file in
his office. True it is that the auditor could properly receive and
place upon the official ballot but one list of Republican nominations
for county offices, but he was bound to so receive and place upon
the ballot the nominations made by the regular Republican county
convention. *State* v. *Falley*, 9 N. D. 450, 83 N. W. Rep. 860.
This he has refused to do. Let the peremptory writ issue as prayed.
All concur.