(91 N. W. Rep. 943.)

## STATE *ex rel* F. T. GRANVOLD *vs*. E. F. PORTER.

**Nominees—Official Ballot—Split Convention.**

> In determining which of two sets of nominees of a split political convention are entitled to have their names placed upon the official ballot as the party nominees, the inquiry of the court should be limited to ascertaining which of the conventions from which the nominating certificates emanate is the regular one, and should not extend to an examination of political methods and tactics further than is necessary to ascertain the identity of the regular party convention.

**Delegates Not Voting.**

> Where delegates who are entitled to sit in a party convention are present, but refrain from voting, they cannot, by so doing, invalidate the action taken by a majority of those who do vote. In such case, their silence is deemed to be an assent to the action taken by the majority.

**Political Convention Judge of its own Members.**

> A political convention is the judge of the qualification of its members, and its determination of contests between claimants for seats therein is conclusive.

**Withdrawal of Delegates.**

> The voluntary withdrawal of delegates from a political convention which has been regularly organized does not deprive those who remain of the power to act, or destroy the identity of the convention. In such assemblages the presence of a majority of those entitled to participate is not necessary to constitute a quorum, and those not present are presumed to assent to the action taken by the majority of those who are present and vote.

**Minorty Cannot Withdraw and Hold a Valid Convention.**

> A minority of the lawful delegates to a political convention cannot withdraw from the regular convention, and unite themselves with persons whose credentials have been rejected by the convention, and then successfully claim that they constitute the legal party convention.

**Majority Convention Regular.**

> It is *held*, on the facts stated in the opinion, that the convention held in the Thirty-Fourth legislative district on August 9, 1902, which nominated what is knows as the "Fox Legislative Ticket," was the regular convention of the Republican party, and that the nominees of said convention are entitled to have their names placed upon the official ballot as the nominees of that party.

Application by the state, on the relation of F. T. Granvold, for a writ of mandamus to E. F. Porter, secretary of state. R. A. Fox and others intervene. Writ issued.

*McDermont & Coger* and *Cochrane & Corliss,* for plaintiff.

*Oliver D. Comstock,* Atty. Gen., for defendant.

*Morril & Engerud, A. M. Christianson,* and *L. N. Torson,* for interveners.

YOUNG, J. Upon the application and affidavit of the relator, F. T. Granvold, an alternative writ of mandamus issued out of this court, directed to the Honorable E. F. Porter, secretary of state, commanding him to certify the name of said Gronvold to the county auditors of Pierce and McHenry counties as the nominee of the Republican party for senator for the Thirty-Fourth legislative district, which embraces said counties of Pierce and McHenry, and also to certify the names of James T. Moffet, R. J. Brock, and Benjamin Hammond as the nominees of the Republican party for representatives for said legislative district, or to show cause to this court why the command of the writ had not been complied with. The controversy arises out of a split in the Republican legislative convention, which resulted in two sets of nominess being certified to the secretary of state; both certificates being in due form, and purporting to contain the names of the nominees of the Republican party. The convention, it is conceded, was duly called to be held at the courthouse in Rugby, in Pierce county, at 3 o'clock p. m. on August 9, 1902, and it was during the progress of the convention held at that time and place that the split occurred, and the two rival conventions were held, and the nominations in question made. It is also conceded that Pierce county was entitled to be represented in said convention by seven delegates, and that McHenry county was entitled to a representation of eight delegates; further, that both of said counties held conventions for the purpose of selecting delegates; that the seven delegates selected to represent Pierce county were present at the convention, and, so far as this proceeding is concerned, no dispute exists as to their right to sit, or as to the personnel of the delegates. The fact also appears, without dispute, that seven of the delegates from McHenry county have at no time been in controversy, or the personnel of said seven delegates in dispute. The only controversy as to any of the delegates was in reference to the eighth delegate from McHenry county, and it was over this dispute that the convention divided. One faction, led by R. A. Fox, of McHenry county, who was a candidate for senator from this district, claimed that Charles D. Donnelly was the eighth delegate, whereas the relator, Gronvold, a resident of Pierce county, and also a candidate for the same position, claimed that one George E. Bowers was the eighth delegate.

The affidavit of the relator, upon which the alternative writ was issued, among other things, states that the McHenry county

convention "duly elected to said legislative convention eight delegates, and that one of said eight delegates so elected was George E. Bowers"; that said delegates all assembled at Rugby for the purpose of holding the said Republican legislative convention, except the said George E. Bowers, who had theretofore given his proxy to one George H. Stevens; that the chairman and secretary of the McHenry county convention did not make out certificates showing the election of said eight delegates until the 9th day of August, 1902, which was the day the legislative convention was held, when said chairman and secretary were induced by R. A. Fox to sign credentials containing only six of the names of said eight delegates, upon the assurance of said Fox that he had the right to substitute in place of the other two delegates, if he so desired, the names of other persons as delegates in their places; that said credentials were delivered to him in that condition, and that thereafter the said Fox inserted or caused to be inserted therein as the other two delegates from McHenry county the name of one delegate who had been lawfully elected, and also the name of one Charles D. Donnelly in place of the said George E. Bowers, and that said Charles D. Donnelly was never elected by said McHenry county convention; that said Fox was a candidate for the office of state senator at the time of inserting the name of said Donnelly in place of that of George E. Bowers; that the seven delegates from Pierce county were opposed to said Fox, and in favor of affiant, Gronvold, and that the said George H. Stevens, who held the proxy of said George E. Bowers, was likewise in favor of Gronvold, and opposed to Fox; that said Fox presented said credentials to the said legislative central committee, and deceived said committee into believing that said Charles D. Donnelly had been selected as delegate from said McHenry county, instead of said Bowers; that, upon the "right of said Donnelly to be seated as a delegate in said convention being challenged by said Stevens, said committee referred the question whether said Donnelly or said Stevens was entitled to a seat in said convention to said seven other delegates from McHenry county, all of whom were favorable to said Fox for senator; that the said Fox claimed before said committee the right to substitute said Donnelly in place of the said Bowers; and that his right so to do was recognized by said seven other delegates from McHenry county." The affidavit further states that the seven concededly lawful delegates from McHenry county united with Donnelly and nominated the following persons, to-wit: For senator, Robert A. Fox; for representatives, O. A. Knudtson, Thomas H. Oksendahl, and T. Welo,—and that said Stevens and said seven delegates from Pierce county "in no manner participated in said pretended convention," but that, when it became apparent that the seven delegates from McHenry county were determined to act with said Donnelly, they assembled at the same time and place, and in the presence of the seven lawful delegates from McHenry county, and organized a convention, and by the unanimous

vote of all the delegates from Pierce county, and with said Stevens, who held the proxy of George E. Bowers, nominated the following persons as the Republican candidates for senator and representatives of said Thirty-Fourth legislative district, to-wit: For senator, F. T. Gronvold; for representatives, James T. Moffet, R. J. Brock, and Benjamin Hammond. The affidavit further states that certificates of nomination were made out by the respective secretaries and chairmen of both of said conventions, and filed with the secretary of state.

The secretary of state, in answer to the allegations of the alternative writ, admitted that a Republican convention was duly called and held at the time and place alleged, and that two sets of certificates of nomination, both in due form, were filed in his office, but alleged that he had no knowledge as to which of said certificates contained the rightful nominees of the convention, and that he had no power or authority to determine the question, and for that reason was unable to perform his duty with respect to placing the names of the Republican nominees upon the official ballots, and therefore prayed to the end that the rights of the conflicting claimants might be determined, that R. A. Fox, T. Welo, O. A. Knudtson, and Thomas H. Oksendahl be impleaded, and required to answer the allegations of the writ and set forth any claims they might have to said nominations. In pursuance of such request the nominees of what may be termed the "Fox Convention" intervened and answered, alleging, among other things, that the delegates from McHenry county were, by a resolution duly adopted by the convention, instructed and directed to vote for and use all honorable means to secure the nomination of R. A. Fox as Republican candidate for senator for said district, and T. Welo as one of the Republican candidates for the house of representatives for said district; further, that said convention did, by resolution duly adopted, authorize and empower the said R. A. Fox to select any eight persons he desired as delegates to the legislative convention, and thereby committed and intrusted the selection of said eight delegates to said Fox; that said Fox did thereupon choose and name eight delegates, one of whom was Charles D. Donnelly; that George E. Bowers was not among the number of those so chosen by said Fox; that thereafter the chairman and secretary of the McHenry county convention executed credentials for the delegates so chosen, which credentials included the name of Charles D. Donnelly, and did not include the name of George E. Bowers. The answer of the interveners further alleges the nomination of the interveners, and the filing of their certificates of nomination with the secretary of state, and prays that a peremptory writ of mandamus be issued, commanding said secretary to certify their names as the regular Republican nominees.

Under the laws of this state, the privilege is accorded to political parties which have cast 5 per cent. of the total vote cast for member of congress at the next preceding election to have placed upon the

official ballot one nominee for each office. This right is secured under the statute by filing with the secretary of state or county auditor, as the case may be, a certificate of nomination in the form required by the statute, executed by the chairman and secretary of the political convention making the nominations certified. In case two or more certificates are filed with the secretary of state, both or all purporting to represent the same political party, and containing the names of different nominees for the same office, the power of the courts may be invoked for the purpose of determining which, if any, of the persons so certified are the rightful party nominees. *State* v. *Falley,* 9 N. D. 450, 83 N. W. Rep. 860. Prudential considerations require, however, that, in determining this question, judicial inquiry should be limited to ascertaining which of the conventions filing certificates is the regular one, and should not extend to examining into the methods or tactics employed by political factions either in caucuses or conventions, further than is absolutely necessary to determine the identity of the party convention, and thereby decide who are the true party nominees. We have in this case a party convention duly called, and a division of the same into two conventions, both held at the same time and in the same room. The question submitted for our determination is which, if either, of these two conventions was the regular Republican legislative convention of the Thirty-Fourth legislative district. The evidence submitted upon the questions at issue is contained in 185 affidavits, which are almost equally divided between the two factions. As to many facts which it is plain were equally within the knowledge of the affiants, and as to which we cannot indulge the charitable belief that the witnesses were mistaken, the affidavits are squarely contradictory. This condition exists as to so many affidavits and so many facts that we are driven to the conclusion that the affidavits were either carelessly signed, without reading or considering their contents, or that the affiants had but slight regard for the obligation of their oaths. We are able, however, to base our decision upon facts which are either not in dispute, or which are amply sustained by the affidavits of both parties.

We will first turn to the McHenry county convention. It is claimed by the relator that George E. Bowers was elected by the convention as the eighth delegate. The interveners contend that the only action taken by the convention was to authorize R. A. Fox to select the delegates, and that he selected Charles D. Donnelly, and did not select Bowers. It is conceded that the convention passed a resolution instructing its delegates to the legislative convention to vote for and use all honorable means to secure the nomination of Fox for state senator, and that said convention, also, by resolution duly adopted and entered in its minutes,—and this fact is not disputed,—authorized and empowered said Fox to choose the delegates to said legislative convention. The fact is established by a preponderance of the evidence that subsequent to the passage of such resolution a list of eight names was placed in the hands of the

secretary of the convention, and the same was read to the convention, and that said list contained the name of George E. Bowers as one of the eight delegates and did not contain the name of Charles D. Donnelly. The further fact is indisputably established, however, that the convention took no action upon the names so read. No motion was made to elect said persons as delegates. Neither does it appear that the convention desired to act upon the selections made by Mr. Fox. The resolution adopted by the convention intrusted the selection of delegates entirely to him, and contained no language which required him to report to the convention the names of the persons chosen by him. The affidavit of the relator, upon which the alternative writ was issued, stated that the eight delegates from McHenry county were elected by the convention. In this the relator was clearly mistaken, if he meant that the convention voted upon the delegates, or took any affirmative action upon the names; for it clearly appears from numerous affidavits, including a large number of those filed by the relator, that the only action taken by the McHenry county convention in reference to selecting delegates was to authorize Mr. Fox to select them. Subsequent to the convention, Stevens, under the belief that Bowers was a duly accredited delegate, procured his proxy. Mr. Fox, for reasons satisfactory to him, and with which we have no concern, concluded that he did not want Bowers as a delegate, and accordingly caused his name to be omitted from the credential which were executed by the chairman and secretary of the convention, and substituted therein, in lieu of said Bowers, the name of Charles D. Donnelly, whose name was not read or mentioned before the McHenry county convention. The credentials were executed on the morning of the 9th of August, and were prepared under the direction of Mr. Fox. At the time they were signed they contained but six names. They were left with Mr. Fox by the chairman and secretary with authority to complete the same, upon his assurance and the understanding that he had authority to choose the delegates. This he did by inserting one name which was read to the McHenry county convention, and the name of Charles D. Donnelly. The credentials in question, omitting the names of the delegates and the signatures of the chairman and secretary, are as follows: "Towner, McHenry County, N. D., July, 1902. This is to certify that at the regular Republican county convention held in Towner, McHenry county, North Dakota, on July 21st, 1902, the said convention delegated the power and authorized Robert A. Fox to select all the delegates (being in number eight) to the Republican legislative convention for the Thirty-Fourth legislative district, to be held in Rugby, Pierce county, North Dakota, on the 9th day of August, 1902. Said delegates selected Aug. 9th, 1902. The following named are duly selected delegates for the said convention, and are authorized to act as such delegates in every capacity appertaining to said delegates at the said legislative convention." We find, then, that, on the day

the legislative convention assembled, Charles D. Donnelly was accredited by credentials as a delegate from McHenry county, and as one of the eight delegates to which that county was entitled, and that George E. Bowers had no credentials, and it is not claimed that he ever had any credentials, from the officers of the McHenry county convention.

· We turn now to the legislative convention at Rugby. It is conceded that the legislative committee convened in the courtroom, where the convention was called to be held, immediately before the assembling of the convention,—all members being present in person or by proxy,—for the purpose of examining credentials and determining what persons were entitled to participate in the preliminary organization of the convention; and it is further conceded that said committee was clothed with such power, and that it was their duty to make such determination. The meeting of the committee was held upon the platform in·the courtroom in the presence of the delegates and a considerable number of spectators. The credentials of the Pierce county delegates were presented and adopted. The committee also accepted the credentials of the McHenry county delegation, hereinbefore set out, which contained the name of Donnelly, and did not contain the name of Bowers. Stevens presented his proxy from · Bowers to said committee, and demanded that he be given a seat in the temporary organization. The controversy as to whether Donnelly or Stevens was entitled to a seat was discussed at considerable length before the committtee, in the hearing of the delegates and spectators. Stevens addressed the committee for eight or ten minutes, stating the circumstances under which he procured the proxy, and his version of the facts as to Bowers' selection by the McHenry county convention. At the request of a member of the committee, Mr. Fox preented his views, claiming that the McHenry county convention had authorized him to select the delegates, and that he had selected Donnelly, and had authority to do so by virtue of the resolution of the McHenry county convention. The action taken by the legislative committee upon this contest, which was after a full hearing in the presence of the delegates, is correctly set forth in the minutes of the secretary, H. C. Hurd, of Pierce county, and an adherent of the Pierce county faction, as follows (omitting the names of the committeemen and delegates) : "Rugby, N. D., August 9th, 1902. Legislative committee for the Thirty-Fourth legislative district met for the purpose of acting on the credentials of persons entitled to participate in the legislative convention to be held at Rugby, North Dakota. * * * Credentials of McHenry county delegation were presented * * * and accepted. Credentials from Pierce county * * * were presented and adopted. George H. Stevens presented a proxy of George E. Bowers, whose name not appearing on credentials from McHenry county, the committee decided to leave matter to delegation from McHenry county." It is clear, we think, that the effect of the committee's action was to

accpet Donnelly's credentials, and deny Stevens' alleged right to participate in the temporary organization, and, further, that any uncertainity which may have existed as to his status was removed by the unanimous action of the McHenry county delegates in repudiating his claim, and by their persistent denial of his right to a seat at all stages of the proceedings. That this was their attitude appears from the affidavit of the relator. Upon the adjournment of the legislative committee, the chairman thereof, G. H. Strong, requested the delegates to come forward and take their places in front of the platform, which request was complied with; and he then called the convention to order, and stated that the nomination of a temporary chairman was in order. Charles D. Donnelly was placed in nomination by one of the McHenry county delegates. James Moffet, of Pierce county, and a member of the legislative committee, but not a delegate, placed G. H. Strong in nomination. His attention being called to the fact that he was not a delegate, he withdrew the nomination. Donnelly was then elected temporary chairman by unanimous vote, and, upon taking the chair, brifly addresesd the convention. H. W. Ellingson, a Pierce county delegate, was then unanimously elected temporary secretary. The original minutes of the legislative committee, kept by H. C. Hurd, which are contained in the record, recite the perfecting of the temporary organization as follows: "Convention called to order by Chairman Strong, and C. D. Donnelly was chairman, and H. W. Ellingson was elected secretary." Ellingson took his position upon the platform, and entered upon the performance of his duties as secretary. Upon motion and by unanimous vote, the temporary organization was made permanent. This was followed by a further motion that the chair appoint a committee on order of business, which was carried unanimously. Then followed a motion that the chair appoint a committee on resolutions, which was also carried unanimously. The chairman announced the membership of the committees, and upon motion, unanimously carried, the convention took a recess. The report of the foregoing proceedings, so. far as shown by the minutes kept by the secretary, Ellingson, which are contained in the record presented to this court, are as follows: "Moved and seconded that the temporary organization be made permanent. Chair appointed on order of business, G. Davidson, ———— Jevnager. Chair appointed on committee on resolutions O. T. Tofsrud, A. M. Christianson, A. M. Rauthgarn. Moved and seconded that we have a recess."

Thus far the proceedings of the convention were conducted by the 15 delegates reported by the legislative committee as entitled to participate in the temporary organization, to-wit, seven delegates from Pierce county, and the eight accredited delegates from McHenry county; and it appears that the proceedings of the convention were in all respects unanimous, and that there was no protest against or dissenting vote upon any of the several motions upon which the convention is shown to have acted. There is a conflict in

the affidavits as to whether the report of the legislative committee was read to the delegates when the convention was called to order; also as to the extent to which the Pierce county delegates actively participated in the action taken by the convention. A large number of the affidavits filed by the interveners state that the roll of delegates was read by the chairman of the legislative committee, and that the Pierce county delegates voted on the several motions above referred to. The Pierce county delegates and the adherents of that faction state, however, that the roll of delegates was not read, and that they refrained entirely from voting. They further state that Ellingson, who was one of their number, did not voluntarily act as secretary, but that he was coerced into so doing; one affidavit stating that he was carried to the secretary's chair upon the platform. The affidavits of the Fox faction deny that any force or undue influence was used, and state that Ellingson assumed the performance of his duties of secretary voluntarily and pursuant to his election. It is not necessary to a decision of this case, for reasons which will hereafter appear, to determine whether the roll of delegates was or was not read, or whether the Pierce county delegates voted or refrained from voting, as they claimed. The contention, however, that Ellingson's acts as secretary should be deemed to have been done under duress, and did not, therefore, amount to a participation in the convention, cannot be sustained, upon the record before us, in which it appears that he officiated as secretary until recess was taken, and recorded the proceedings of the convention; further, that he assumed his position after recess, and retained the same until the delegates from his county retired from the convention. Shortly after the convention reassembled, after recess, Stevens inquired of Chairman Donnelly as to his status in the convention. His reason for doing so, as stated by him, as well as by the Pierce county delegates in their affidavits, was that it was their intention, in the event that the seven other delegates from McHenry county were willing to recognize him as a delegate, "he and the other seven delegates from Pierce county would ratify the selection of Donnelly as chairman, and of Ellingson as secretary." Upon the refusal of the chairman, to recognize Stevens as a delegates, George H. Davidson, a Pierce county delegate, called another convention in the same room. At the request of said Davidson, Ellingson surrendered his position as secretary, and joined the Pierce county delegates. At this juncture all of the delegates from Pierce county—seven in number—withdrew. Six of them united with the relator, Gronvold, who appears to have obtained the proxy of one Elling Enger, a regularly accredited delegate of Pierce county, which proxy, however, was not presented to or reported by the legislative committee, and with George H. Stevens, whose right to sit had been rejected by the legislative committee, the McHenry county delegates, and by the convention itself, and organized the convention which nomiated the relator for state senator, and for representatives the persons hereinbefore named. The con-

vention presided over by Donnelly, which, after the withdrawal of the Pierce county delegates, was made up of the eight McHenry county delegates, whose right to sit had been recognized by the legislative committee and by the convention, elected a secretary in the place of Ellingson, and nominated R. A. Fox for state senator, and as representatives the persons before named. Prior to the adjournment of the Fox convention a resolution was formally adopted, and entered in the minutes, declaring that Stevens was not entitled to a seat in the convention.

Upon these facts we reach the conclusion, without hesitation, that the question as to which convention was the regular one—and that is the only question in this case—must be resolved against the relator, and in favor of the Fox convention. It will be noted that the delegates from both Pierce and McHenry counties assembled in the court room, and that they were called to order for the purpose of organization by the proper officer; further, that all of the votes taken upon the selection of temporary and permanent officers of the convention and for the appointment of committees, as well as all subsequent votes, including the nomination of the Fox ticket, were unanimous. The affidavits singularly agree that there were no negative votes on any proposition before the convention. The relator claims that all of the proceedings of this organization, including the election of its chairman and secretary, were effected by a minority of the delegates present and entitled to participate in the convention, and should therefore count for naught. His contention is that the seven Pierce county delegates and Stevens constituted a majority of the convention, and that they did not vote or participate in the convention. From this assumption the conclusion is reached that all of the proceedings of the Fox convention were based upon the action of but seven delegates. These assumptions are clearly erroneous. The claim that the Pierce county delegates did not participate in the proceedings cannot be sustained. True, they may not have voted, and for the purposes of this proceeding we will assume they did not; but concededly they were present, and the most they claim is that they refrained from voting for officers and upon several motions which were made. This was not enough. They constituted themselves members of the convention by their presence, and by their silence they assented to all that was done. The rule applicable to assemblages such as this is that, "after an election has been properly proposed, whoever has a majority of those who vote, the assembly being sufficient, is elected, although a majority of the entire assembly altogether abstain from voting, because their presence suffices to constitute the elective body, and if they neglect to vote it is their own fault, and shall not invalidate the act of the others, but be construed an assent to the determination of the majority of those who do vote; and such election is valid, though the majority of those whose presence is necessary to the assembly protest against any election at that time, or even the election of the individual who has

the majority of votes." This statement of the rule was approved in *State* v. *Green,* 37 Ohio St. 227, and *Launtz* v. *People,* 113 Ill. 137, 55 Am. Rep. 405. Lord Mansfield, in *Oldknow* v. *Wainwright,* 2 Burrow, 1017, states that, "whenever electors are present and do not vote at all, they virtually acquiesce. in the election made by those who do." That was a case relating to the election of a town clerk, at which 21 assembled, 9 of the 21 voted for the nominee, 12 did not vote at all, and 11 protested against the election. See, also, *U. S.* v. *Ballin,* 144 U. S. 1, 12 Sup. Ct. 507, 36 L. Ed. 321; *Attorney General* v. *Shepard,* 62 N. H. 383, 13 Am. St. Rep. 576. In *Rushville Gas Co.* v. *City of Rushville,* 121 Ind. 206, 23 N. E. Rep. 72, 6 L. R. A. 315, 16 Am. St. Rep. 388, the court quoted the above rule, and added that: "If members present desire to defeat a measure, they must vote against it, for inaction will not accomplish their purpose. Their silence is acquiescence, rather than opposition. Their refusal to vote is, in effect, a declaration that they consent that the majority of the quorum may act for the body of which they are members." See cases cited in opinion.

The contention that Stevens was entitled to participate in the preliminary organization and in the convention is equally untenable. The most that can be said is that he was a contestant for Donnelly's seat. The decision of the legislative committee was adverse to him, and it is conceded that this committee had power to pass on contests for the purpose of the preliminary organization. His demand for recognition was also rejected by the unanimous action of the convention, in which, as we have seen, all of the Pierce county delegates participated. On the question as to whether Stevens or Donnelly had the better right we may not inquire, for the reason that the convention was the exclusive judge of the qualifications of its members, and by its action it conclusively determined the contest against Stevens and in favor of Donnelly. *State* v. *Lavik,* 9 N. D. 461, 83 N. W. Rep. 914.

The next inquiry is whether the withdrawal of the seven Pierce county delegates from the convention deprived it of the power of proceeding with the business for which it was convened. A negative answer must be given to this question. The convention was not a select body, requiring the presence of a majority of all the persons entitled to participate in order to constitute a quorum for the transaction of business. The common-law rule as to assemblages of this character is that, where the meeting is regularly called, those who actually assemble constitute a quorum, and a majority of those voting is competent to transact business. Those who do not attend are presumed to assent to the action of the majority of those who do attend and vote. *Field* v. *Field,* 9 Wend. 395; *Craig* v. *Presbyterian Church,* 88 Pa. 42, 32 Am. Rep. 417; *Ex parte Willcocks,* 7 Cow. 401, 17 Am. Dec. 525; *Everett* v. *Smith,* 22 Minn. 53; *Smith* v. *Proctor,* (N. Y.) 29 N. E. Rep. 312, 14 L. R. A. 403; *Lawrence* v. *Ingersoll,* (Tenn.) 6 L. R. A. 308, and note (s. c. 12

S. W. Rep. 422, 17 Am. St. Rep. 870) ; *Cass County* v. *Johnston,* 95 U. S. 360, 24 L. Ed. 416. It follows, therefore, that, by withdrawing, the delegates merely waived their right to participate in the convention, and that their action in so doing did not affect its identity, or deprive those who were present of the right to proceed with the business of the convention. This we understand to be true in all cases, whether the withdrawing members constitute a majority or a minority. In this case the fact is established, however, that a majority of lawful delegates was present at all times in the Fox convention, and participated in its action. The convention which nominated the relator consisted of six regular delegates,—the relator, who held a proxy, and Stevens, whose right to participate had been rejected by the regular convention. These facts bring the case fairly under the decision of this court in *State* v. *Lavik,* supra, wherein we held that a minority of the delegates to a political convention cannot withdraw therefrom, and join themselves with those whose credentials have been rejected, and successfully claim that they constitute the legal party convention.

It follows from what we have said that the alternative writ should be quashed, and a peremptory writ issued, commanding the secretary of state to certify the Fox ticket as the Republican nominees, and it is so ordered. All concur.